O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL JOHN REA,                    )        CASE NO.  CV 12-09044 RZ
                                     )
                  Petitioner,        )
                                     )        MEMORANDUM AND ORDER
        vs.                          )        DENYING HABEAS PETITION
                                     )
E. VALENZUELA, WARDEN,               )
                                     )
                  Respondent.        )
_____)

        The parties have stipulated that the undersigned Magistrate Judge may decide this Petition for Writ of Habeas Corpus.  *See* 28 U.S.C. § 636(c).  For the following reasons, the Court will deny the petition and dismiss the action with prejudice.

**I.**

**BACKGROUND AND CLAIMS PRESENTED**

        After a bench trial in Santa Barbara County Superior Court, Petitioner Michael John Rea was convicted of battery on a peace officer, trafficking in methamphetamine and numerous other crimes.  *See* Lodgment 6 at 1-2.  The California Court of Appeal affirmed in all respects pertinent here, *see id.*, and the California Supreme Court denied further direct review.  Pet. ¶ 4.  Having withdrawn the second of the two claims he initially presented, Petitioner now asserts only the following claim:

The trial court, having earlier granted Petitioner's *Faretta* waiver of his right to be represented by counsel, erred in denying Petitioner's motion two days before trial to revoke his self-represented status.  In the alternative, Petitioner argues, the court erred in denying him a continuance for trial preparation *in pro per*.

## II.

## STANDARD OF REVIEW

The Court assesses the Petition under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254(d).  To resolve Petitioner's claim, the Court will examine the decision of the California Court of Appeal rejecting it on direct review, rather than the California Supreme Court's subsequent "silent" denial of further direct review.  This is because "where there has been one reasoned state court judgment rejecting a federal claim, [federal habeas courts should presume that] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

## III.

## THE CRIMES

In affirming, the California Court of Appeal summarized the underlying factual findings.  Petitioner has failed to rebut these findings with clear and convincing evidence.  The findings therefore are presumed to be correct.  28 U.S.C. § 2254(e)(1); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2001) (presumption applies to findings of state appellate courts as well as trial courts).  That summary is as follows:

*March 2010 Offenses*

On March 27, 2010, in the early afternoon, Santa Barbara Deputy Sheriff Charles Anderson was in uniform, driving a marked patrol car through

Los Olivos.  He noticed appellant driving without a front license plate and stopped his car.  Appellant spoke very rapidly, his hands were shaking, and he was fidgety.  Anderson returned to the patrol car to check the Department of Motor Vehicles records, and noticed appellant shifting around in his seat.

Anderson returned to appellant's car, and asked him to remove his sunglasses, tilt his head back, and close his eyes.  He complied.  Anderson noticed that appellant had an "extreme amount of eyelid tremors," and might be under the influence of methamphetamine.  Appellant said he had smoked marijuana several hours earlier.

Anderson returned to the patrol car, called and waited for back-up.  At about 1:45 p.m., Santa Barbara Deputy Sheriff Robert Samaniego arrived, and Anderson asked appellant to step out of his car.  He initially refused but complied.  While taking him to a shady spot for field sobriety testing, Anderson noticed a crumbly, green substance that looked like marijuana on the front of appellant's shirt.  During the sobriety testing, appellant had a very high pulse rate.  Anderson concluded that he was under the influence of methamphetamine and marijuana, and told appellant he was arresting him.  As he tried to handcuff him, appellant's fist or elbow struck Anderson's forehead, above his right eye.

Samaniego testified that appellant spun around when Anderson tried to arrest him.  When Samaniego tried to assist, all three men fell to the ground, where appellant continued struggling and resisting.  The deputies struggled with him for approximately four to six minutes before they could restrain him.  During that time, they instructed him to give them his hands.  Appellant said, "No," and managed to stand.  After trying twice without success to restrain appellant with a taser, Samaniego struck him once on his left thigh with a baton.  Using the taser, Samaniego managed to get appellant to the ground, where he and Anderson handcuffed him.

Two bystanders, Joseph Hoage and Sandra Clary, observed the struggle and testified at trial. Hoage recalled that just after Anderson asked him to place his right hand behind his back, appellant punched Anderson in the head. Anderson looked dazed. When Samaniego rushed over to help, Hoage said that a "full on brawl" broke out with appellant "100 percent resisting" because he did not want to be handcuffed. Hoage saw appellant fight with the deputies and ignore their orders. Clary testified that appellant failed to comply with the deputies' verbal orders and struggled with them.

After handcuffing appellant, Samaniego and other deputies searched his car. They recovered 2.41 grams of methamphetamine, some marijuana, plastic baggies, two digital scales, a book about marijuana cultivation, two cell phones, a pipe for smoking methamphetamine, and cigarette rolling paper. The seized methamphetamine would provide 24 usable doses with a total value of about $240.

Based upon the quantity of methamphetamine, the presence of scales and baggies, and the contents of some text messages on the cell phones, Santa Barbara Deputy Sheriff Neil Gowing, a member of the narcotics unit, opined that appellant possessed the methamphetamine and the marijuana for purposes of sale.

Samaniego sustained bruises on his knees and right hands from struggling with appellant. Anderson suffered more serious injuries. He traveled from the scene of the incident to the hospital, by ambulance, and was discharged that evening. The initial blow to his forehead "dazed" him, made him "black out" and caused a concussion, with extreme swelling and vomiting. The day after the incident, his entire body was extremely sore, with multiple cuts and abrasions. The concussion affected his memory of the incident. His knees remained sore for about three months. At the time of

trial, over eight months after the incident, he still had some swelling and numbness around his right eye.

### Prior Resisting Arrest Incident

Grover Beach Police Sergeant Jerry Cornwell testified that on Christmas Day in 2008, he and two other uniformed officers spoke with appellant outside his front door.  An officer advised him that they were arresting him and directed him to turn around and place his hands behind his back.  Appellant failed to comply and moved toward his house.  The three officers grabbed him and took him to the ground, where appellant physically resisted and failed to comply with the officers' repeated orders to put his hands behind his back.

### Defense Evidence

Appellant testified that he was surprised when Anderson tried to handcuff him on March 27, 2010.  He did not intend to attack anyone that day.  He was "high on meth and on marijuana" at the time of the incident, and did not remember what happened after Anderson first grabbed him.  He did remember pulling away from Anderson.  Appellant admitted that he resisted Grover Beach Sergeant Cornell during a 2008 incident.

Defense investigator Ron Rose testified that he formerly worked as a police officer. He explained that a person typically draws inward when reacting to a surprise.  Rose believed that appellant resisted arrest but questioned whether he intended to hurt Anderson.

Lodgment 6 at 2-5.

**IV.**

**CLAIM 1: DENIAL OF MOTION TO REVOKE *FARETTA* WAIVER (AND DENIAL OF CONTINUANCE TO PREPARE FOR TRIAL *IN PRO PER*)**

Petitioner claims that the trial court erred in denying his motion to revoke his waiver of counsel.  In the alternative, Petitioner argues that the trial court erred in refusing his request for a continuance to prepare for trial *in pro per*.

**A.    Applicable Law**

Although the Sixth Amendment guarantees a criminal defendant the right to an attorney at all critical stages of his prosecution, *see Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), a criminal defendant may voluntarily and intelligently waive that right and proceed as his own counsel.  *Faretta v. California,* 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).  The Supreme Court has never decided "whether and under what circumstances a defendant who validly waives his right to counsel has a Sixth Amendment right to reassert it later in the same stage of the criminal trial." *John-Charles v. California*, 646 F.3d 1243, 1249 (9th Cir. 2011).  *Faretta* itself, the Ninth Circuit explained in *John-Charles*,

> thus is not "clearly established" Supreme Court precedent for purposes of [petitioner's] claim that he is constitutionally entitled to the reappointment of counsel.

*Id.*  This lack of Supreme Court precedent may alone require the denial of this claim, for how can the state courts violate, or unreasonably apply, a precedent that does not exist? *See* 28 U.S.C. § 2254(d); *Knowles v. Mirzayance*, __ U.S. __, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009) ("[T]his Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.") (quotation omitted).

But the same Ninth Circuit panel in *John-Charles* held that the lack of a *specific* Supreme Court precedent for reappointment of counsel did not end its analysis.

Notwithstanding the Supreme Court's silence on the specific issue at hand, we must also consider whether a state court's denial of a request for reappointment of counsel after a *Faretta* waiver constitutes an unreasonable application of the general principles enunciated in *Gideon* and *Faretta*. . . . [E]ven a general standard "may be applied in an unreasonable manner[,] . . . [but] the more general the rule being considered, the more leeway courts have in reaching outcomes in case-by-case determinations.

646 F.3d at 1249 (internal quotation marks and citations omitted).

### B.    State Courts' Opinion

The California Court of Appeal explained this claim, and the reasons for its rejection, in the following portion of its opinion. The excerpt is lengthy due to the need for extensive procedural background for the trial court's decision to reject reappointment of counsel and a continuance in this particular case.

### *Procedural Background*

On May 24, 2010, appellant filed a motion to substitute his appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), before the preliminary hearing. The court denied his motion after conducting a *Marsden* hearing.

On September 20, 2010, appellant pled not guilty. The court set November 9, 2010 as the trial date.

On November 1, 2010, eight days before the scheduled trial date, appellant moved to represent himself pursuant to *Faretta*.  He withdrew the motion on the following day.

On November 2, 2010, the trial court heard a defense continuance request.  After initially opposing the continuance, the prosecutor agreed to continue the trial to November 30, 2010.  Just before adjourning on November 2, the court reiterated that the case was set for jury trial on November 30, and admonished the parties to "[p]lan to start the jury trial at 9:30."

On November 12, 2010, appellant filed a hand-written *Marsden* motion.  He also submitted a signed, completed form waiver of his right to counsel and election to act without a lawyer.

On November 15, 2010, the trial court conducted in-camera proceedings, and denied appellant's *Marsden* motion.  It also considered his request to represent himself pursuant to *Faretta*.  The court discussed the *Faretta* waiver form with him, and admonished him that he would be required to prepare his defense, do his own research, and conduct his own investigation, without the advice of a lawyer.  Appellant informed the court that the only things he had yet to do were to "talk to the witnesses," obtain some reports in possession of his counsel and view the COBAN.FN3 Defense counsel then stated that "if there [were] police reports [appellant did] not have yet," he would make attempts to get them that afternoon, or have them "delivered to the jail" the next day.

FN3.  COBAN is an audio and visual system that automatically records events occurring when the patrol vehicle lights are activated.  An officer can manually turn on the COBAN system.

The trial court then admonished appellant that he "would be forced to be ready for trial on the 30th without really any more resources than [he had] at present except for the opportunity to present [his] own case."  Counsel inquired whether the court would appoint an investigator to assist appellant despite the short notice.  The court responded, "Well, we would attempt to do that, but there are time constraints here, including the Thanksgiving holiday.  The only basis on which this motion would be granted is Mr. Rea's understanding that he is going to have to run – assume the responsibility for the trial at this point with whatever services we can provide to assist him.  [¶]  If you're saying you cannot be ready for trial without having an investigator appointed for you to do additional discovery, then I think what you're telling me then is the motion is not timely."  Appellant then stated, "I didn't say that.  My lawyer did.  [¶]  There's 10 maybe or so working days between now and then.  Even if I filed the motion right now, we would be hearing that motion on the same day set for trial.  I think I've been forced into this trial date.  The suppression hearing was stretched out over 26 days it looks like or more [*sic*] or so, and the whole time that I was under the understanding that I was going to be able to file the writ of mandate.  I think that forcing me into a trial right now is partial and not fair.  [¶]  As I understand it's – the DA wants to move forward with that.  I would just say that underlines the unfairness and basically what I'm trying to get through, the whole point.  [¶]  The court responded, "Well, what I hear you saying is . . . you are not prepared to go to trial.  You don't –"  [¶]  Appellant interjected, "Well, I have motions that I'm prepared to file right now today.  If they would interfere with the date of the 30th which we – that's what – there ain't going to be a jury sworn in on that day, is there?"  [¶]  The court replied, "That's the hope we would begin the jury selection process on the 30th."  [¶]  Appellant then stated, "It's the beginning. I mean it's not like the witnesses have to be there on the 30th then

to help me swear in a jury and pick a jury.  And I have motions I want to file.
I told my lawyer I wanted them filed.  He hasn't filed them.  So, you know,
I think it's my constitutional right to be able to file them myself or have a
lawyer that will."

The prosecutor advised the court that he would waive notice on the
motions, and said it was fine, as long as he got the motions the day of trial.
Appellant briefly described the motions.   The court and appellant then
resumed their dialogue:

"THE COURT:  Are you representing to the court, Mr. Rea, that you
will not seek a continuance of the trial date if you are representing yourself?

"[APPELLANT]:  'I'm saying that I would be ready to go forward if
a continuance was denied.  The part of the aspect of the motion to disqualify
the District Attorney requires some affidavits, maybe even some testimony.
I don't know I will be able to do that on my own with resources that I have.
[¶]  I think you're asking me if I'm – if I'm going to try to delay things.  I'm
not going to try to delay things.  I just think things are going to unfold
delayed.

"THE COURT:  Well, I understand you have motions to change venue
and motions to disqualify the District Attorney which if granted would result
in necessary delays in the trial.  But what I'm looking for is an assurance from
you that you are prepared, I think I heard it, to go forward on the 30th if those
motions are denied.

"[APPELLANT]:  I would be prepared, but at the same time I would
want to point out on – that it's fairly common to ask for a stay when
somebody is appealing something, and I plan on appealing with the writ of
mandamus and asking for the writ – a stay – temporary stay on that, too.  [¶]
And it's my understanding I should be able to ask this court for a stay to get
that paperwork ready.  Now, I will be ready to go if everything is denied.

"THE COURT:  And finally you have checked the box that you understand you will be – if you represent yourself up against an experienced, thoroughly prepared prosecuting attorney who will give you no consideration whatsoever, and that you will likely be at an extreme disadvantage and could lose your case.

"[APPELLANT]:  I'm already at an extreme disadvantage.

"THE COURT:  Well, you have checked the box indicating you understand this.  I'm just confirming it with you.

"[APPELLANT]:  Yes, I do understand it.

"THE COURT:  If you're inadequately represented at present, that may be . . . grounds for appeal.  If you represent yourself, it may not be grounds for relief.

"[APPELLANT]:  I didn't check the box that said the representation up until this point was adequate.  I understand that my representation of myself after this point will not be something that's appealable.  Is that what you mean?

"THE COURT:  That's what I mean.  [¶]  All right.  Then on the understanding no continuance would be required until the motions still to be filed are granted, the court relieves Mr. Carroll and permits Mr. Rea to act as his own attorney."  Appellant did not object to the court's description of their understanding.

On November 19, 2010, the trial court heard and denied several motions filed by appellant, including motions to disqualify the prosecutor, change venue, and reduce appellant's bail.  His continuance motion cited several factors, including his former counsel's failure to adequately investigate evidence before the preliminary hearing.  During the hearing, appellant complained about his limited access to resources in the jail and the fact that he had not received a prosecution expert report concerning excessive

force.  When he received the report later that afternoon, he complained that he would not be able to do anything with it because he was not allowed to make phone calls from jail.  During the hearing, appellant denied having promised he would not seek a continuance in order to obtain pro per status.  Rather, he said, he had indicated that if the court denied his continuance, he "would be ready to go."

On November 22, 2010, the trial court stated that attorney Carroll had indicated that if he were reappointed to represent appellant, he would need at least a two-week continuance to prepare for trial.  The court then denied appellant's continuance request, without prejudice to renewing it on November 29th, if a new issue arose.

On November 29, 2010, the trial court stated that, given juror availability considerations, trial would begin on December 1st. It proposed that the parties return the following day to discuss any outstanding issues.

On November 30, 2010, the trial court announced that it had received a written request from appellant to withdraw his motion to represent himself and to reappoint Mr. Carroll, the same lawyer he had earlier asked the court to remove. The court expressed concern that granting the motion would result in delay and disruption because the case involved multiple witnesses and there was inherent difficulty in getting them lined up in a busy trial schedule.  It noted that appellant's former counsel had informed the court that it would "take at least a couple of weeks for him to be up to speed from his point of view."  The court concluded that it would be unreasonably disruptive to change course at that point and try to bring in appointed counsel at such a late stage, and denied appellant's motion to withdraw or revoke his *Faretta* waiver.

Appellant then waived his right to a jury trial, and inquired whether the absence of a jury might enable Carroll to prepare more quickly.  Carroll

advised the trial court that he would not be prepared to proceed without a continuance.  Given his response, the court reaffirmed its ruling denying appellant's motion to withdraw his *Faretta* waiver.  Appellant requested a continuance, and the court denied his request.

During trial, at the conclusion of Deputy Anderson's direct examination, appellant asked the court to allow him to begin cross-examination the following day.  He said he was tired and had a headache.   At his request, the trial court postponed Anderson's cross-examination. The prosecution called two other witnesses that afternoon. The next morning, a Friday, appellant said that he had another headache and asked that Anderson's cross-examination be continued so that he could prepare over the weekend.  The court expressed its preference for Anderson's cross-examination to begin.  Appellant responded, "I'm ready, then," and cross-examined him.

*The Trial Court Did Not Abuse Its Discretion in Denying*
*Appellant's Request to Revoke His Faretta Waiver*

A trial court has wide discretion in deciding whether to appoint counsel for a criminal defendant who previously invoked his right to represent himself pursuant to *Faretta*.  [Citation.]  We review the court's ruling for an abuse of discretion.  [Citation.]  In determining whether a trial court has abused its discretion in denying such a request, we consider factors such as (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel representation; (2) the reasons set forth in the request; (3) the length and stage of the proceedings; (4) the disruption or delay which reasonably might be expected to ensue from the granting of such motion; and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own

attorney.  [Citation.]  However, we determine whether the court abused its discretion by considering the totality of facts and circumstances surrounding the request for reappointment of counsel, rather [than] by a mechanical weighing of those factors.  [Citations.]  The trial court did not abuse its discretion in denying appellant's request to revoke his *Faretta* waiver.

In late November, appellant asked to revoke his *Faretta* waiver, barely two days before the date set for the trial to begin, and asked for the reappointment of attorney Carroll, despite his having made *Marsden* motions seeking Carroll's removal in May and on November 15, 2010.  In addition, appellant had filed an earlier *Faretta* motion on November 1, which he withdrew the next day.  Given those circumstances, the trial court could reasonably infer that he sought to revoke his *Faretta* waiver for purposes of delay and that he would not actually be satisfied if the court reappointed Carroll.  Moreover, before granting appellant's *Faretta* request, the court admonished him, in writing, about the dangers of representing himself and he nevertheless chose to do so.  The court also had required appellant's assurance that he would be prepared to start trial on schedule without a continuance.  Before denying appellant's request to revoke his *Faretta* waiver, the court expressed its concern about juror and witness availability, as well as the difficulties a delay would pose for other scheduled matters.FN4

> FN4.  The instant matter commenced on March 30.  Over the ensuing months appellant twice sought to discharge his appointed counsel, twice sought to represent himself (and once to "unrepresent himself"), to disqualify not only his counsel but also the district attorney and the trial judge.  After he was granted pro. per. status he made the court aware of his intention to bring "a writ of mandate" and other matters despite being on notice that the time for trial was fast approaching and that the court would be chary with the granting of

continuances.  In short, it appears that appellant was "gaming the system."  [Citation.]  As surely as the court has an obligation to insure defendant receives a fair trial it has a "duty to the public to prevent a defendant from playing games in court."  (Ibid.)

Even assuming that the trial court somehow [erred], it is not reasonably probable that he would have obtained a more favorable outcome if the court had appointed counsel to represent him, in view of the overwhelming evidence of his guilt.  [Citation.]  Four witnesses (two deputies and two bystanders) testified as to the battery and resisting arrest charges.  In addition, a Grover City police officer testified that in 2008, appellant resisted the efforts of several officers who tried to arrest him.  As the above background discussion explains, there was also compelling evidence that appellant transported methamphetamine, and possessed it for the purpose of sale, and strong evidence that he was under the influence of methamphetamine on March 27, 2010.

We reject appellant's claim that an attorney might have presented a successful voluntary intoxication defense to the two counts of resisting a peace officer.  Because the prosecution relied on the resistance prong of section 69, the offense was a general intent crime rather than a specific intent crime.  [Citation.]  As such, voluntary intoxication was not a defense. (§ 22.) . . . .

*Continuance Request*

Appellant further contends that the trial court abused its discretion and deprived him of due process by denying his requests to continue his trial.  We disagree.

It is in the trial court's sound discretion to determine whether a continuance should be granted, but the court must not exercise its discretion to deprive the defendant of a reasonable opportunity to prepare. [Citations and further California law discussion omitted.]

[Penal Code] Section 1050, subdivision (b) provides that "[t]o continue any hearing in a criminal proceeding, including the trial, . . . a written notice shall be filed and served . . . at least two court days before the hearing sought to be continued, together with affidavits or declarations detailing specific facts showing that a continuance is necessary . . . ." A continuance shall not be granted absent good cause. (*Id.*, subd. (e).)

A court may condition the granting of the right of self-representation on defendant's waiver of a continuance. [Citation.] A "'defendant who chooses to represent himself assumes the responsibilities inherent in the role which he has undertaken,' and 'is not entitled to special privileges not given an attorney . . . .' [Citations.]" [Citation.] "'In determining whether a denial [of a request for continuance] was so arbitrary as to deny due process, the appellate court looks to the circumstances of each case and to the reasons presented for the request.' " [Citation.] We have already described the relevant circumstances and reasons surrounding appellant's request for a continuance. He has not met his burden of establishing that the lower court rulings exceeded "the bounds of reason, all circumstances being considered." [Citation.]

Lodgment 6 at 5-12.

### C.    Discussion

Although the background for this claim is extensive, this Court's analysis need not be.    The denial of the *Faretta*-revocation aspect of this claim was clearly not

- 16 -

unreasonable in its application of the general principles of *Faretta* and *Gideon*. It is difficult to imagine how the trial judge could have been clearer in requiring that Petitioner be ready to proceed to trial *in pro per* on November 30, even if the court were to have denied Petitioner's mid-November motions. And in response, Petitioner's promise of his readiness to proceed – again, even if the judge denied further continuances – was crystal clear. Petitioner's prior conduct relating to representation does not aid his claim, as the state courts explained in a footnote. Petitioner twice tried to fire his appointed counsel, twice sought to represent himself and even sought to disqualify the prosecutor and the judge. Finally, the tardiness of Petitioner's revocation request, made two days before the trial date, weighs against this claim.

The state courts also did not violate or unreasonably apply Supreme Court precedent in making their fallback ruling that any possible error was harmless. In *John-Charles, supra,* the petitioner argued that a possible error in refusing to re-appoint counsel was a "structural error" requiring reversal no matter how harmless it may have been. "We disagree," the Ninth Circuit explained.

> John–Charles's position lacks even a toehold in clearly established Supreme Court precedent. As discussed above, no Supreme Court authority holds that a defendant has a constitutional right to post-*Faretta* reappointment of counsel once trial proceedings have commenced. Given this landscape, bounded only by the requirement to reasonably apply the general principles of *Gideon* and *Faretta*, state courts could reasonably decide to vest the reappointment decision in the trial judge's discretion, prescribe a test for guiding that discretion, and establish a framework for reviewing errors in trial courts' application of that framework in particular cases. A state court's decision to do any or all of these things would not be contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

1    In short, the Supreme Court has not clearly articulated a constitutional
2    right to post- *Faretta* reappointment of counsel during trial.  It has not defined
3    the standard of review that should apply to trial courts' handling of such
4    issues.  And it has not spoken on whether a trial court's error in ruling on a
5    reappointment request is structural or trial error.  This silence compels us to
6    defer to the state court's reasonable attempts to fill the void.  Even if we
7    would have interpreted Sixth Amendment requirements differently than the
8    California courts, we cannot say the state court's analysis is objectively
9    unreasonable.  *See Harrington* [*v. Richter*], [___ U.S. ___,] 131 S.Ct. [770,]
10   785[,] [178 L.Ed.2d 624] (2011).  Accordingly, we conclude that the
11   California Court of Appeal's decision here (i.e., that the trial court's error was
12   harmless beyond a reasonable doubt) is not contrary to or an unreasonable
13   application of clearly established Supreme Court precedent.

14

15   646 F.3d at 1251.  Here, the California Court of Appeal applied a less-rigorous test for
16   harm than the harmless-beyond-reasonable-doubt test underlying *John-Charles*.  Instead,
17   the appellate court assessed whether, if not for the possible error, it was "reasonably
18   probable that [Petitioner] would have obtained a more favorable outcome[.]" Lodgment 6
19   at 11.  Nonetheless, its ruling was at least reasonable.  Petitioner essentially does not
20   challenge the drug-related evidence, and four eyewitnesses described in confident detail
21   how Petitioner violently resisted arrest and seriously injured Deputy Anderson.  It is not
22   unreasonable, in light of the record, to conclude that reappointment of counsel would not
23   have been likely to have led to a better trial result.

24   For similar reasons, the state courts did not violate or unreasonably apply
25   Supreme Court authority in denying Petitioner a continuance.  Indeed, Petitioner expressly
26   promised that he would be ready to proceed as his own counsel even absent such a
27   continuance.  Habeas relief is unwarranted.

28

- 18 -

# V.

## CONCLUSION

For the foregoing reasons, the Court denies the petition and will enter Judgment dismissing the action with prejudice.

DATED:   April 25, 2013

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE